CHIEF JUSTICE HARDIN
delivered the opinion of the court.
Milton Craig died in 1862, having previously separated from his wife, Eliza Craig, and become involved in a suit with her, in which, it seems, she had been divorced from him, and *98 was at the time of his death prosecuting a claim against him, which upon a revivor of the suit against Sally M. Craig, administratrix of said decedent, and herself and Thompson T. Craig, his only heirs, resulted in a judgment against them, in March, 1867, for the sum of four hundred dollars, with interest from the 19th of September, 1866. Upon that judgment an execution was issued, which on the 25th -of June, 1867, was levied on five sevenths of a tract of about two hundred acres of land, as having descended to them from Milton Craig, their father, and derived by him by inheritance from his five deceased children, in whom, in common with the other two, the title was vested — viz., Thomas S. Craig, James Craig, Twyman Craig, Mary Eliza Craig, and John A. Craig; and under that levy the supposed title of Milton Craig, as descended to his heirs, of five sevenths of the land was sold by the sheriff on the 19th of August, 1867, and purchased by said Eliza Craig for $482.19, the amount of her debt, interest, and costs. Said five sevenths of the land was valued by the appraisers appointed by the sheriff a.t $3,571.42$; but the land was not redeemed, and the sheriff conveyed it to the purchaser on the 14th of September, 1868.
It appears, however, that previously in two suits in equity against the administrator and heirs of John A. Craig, deceased— one of them in favor of J. S. Lillard, and the other in favor of M. J. Williams — each for an amount less than fifty dollars, exclusive of interest and costs, for which judgment had been rendered by the Gallatin Quarterly Court against the administrator alone, and executions had been issued thereon and returned, in effect, “no assets found,” a judgment had been rendered directing a sale of the one undivided seventh part of the land which descended from John A. Craig; and that under that judgment W. H. Garnett became the purchaser therefor, in June, 1861, for the aggregate sum of the two debts, interest, and costs, amounting to $122.40; and that in March, 1866, a *99 conveyance of that interest was made and acknowledged by a commissioner and approved by the court, and ordered to be certified to the proper officer for record.
On the 25th day of August, 1869, said W. H. Garnett having died, and the appellee Granville Garnett, his administrator, having recovered a judgment against the administratrix of Milton Craig for three hundred and seventy-five dollars, on which an execution had been issued and returned, in substance, “no assets found,” said administrator instituted this suit for setting aside the sale under the execution of Eliza Craig, and a sale of so much of the land as belonged to Milton Craig at his death as might be necessary to pay his debts, upon the grounds, as substantially, alleged, that said Eliza and Sally M. Craig, anticipating his recovery of judgment against the latter as administratrix of her father, combined and agreed together that all the land should be levied upon and sold under said Eliza’s execution, and bought by her for the amount of her debt, for the fraudulent purpose of preventing the plaintiff from collecting his debt; and that in furtherance of that purpose said Sally M., as administratrix, would acquiesce in the sacrifice of the land under her mother’s execution by failing and refusing to redeem the land.
These averments of fraud and collusion, if so much is imported by them, were, in our opinion, sufficiently controverted by the separate answers of Sally M. and Eliza Craig; and the latter, moreover, by cross-pleading against the plaintiff and the widow and heirs of his intestate, sought the judgment of the court declaring the sale and conveyance to W. H. Garnett under the judgment of Lillard and Williams void for want of jurisdiction in the court to adjudge the sale, or setting the sale and conveyance aside for irregularity of the proceedings and inadequacy of price, or at least construing the purchase to have been made by Garnett in trust for Milton Craig, and at his instance. The matter of the *100 cross-petition was traversed by a reply, and under a prayer of the petitioner the cause was referred to a commissioner to ascertain and report the indebtedness of Milton Craig’s estate, which, according to the report of the commissioner, was only the debt of the plaintiff, no other claims being presented.
The cause being heard on the pleadings, exhibits, and commissioner’s report, the court adjudged that four sevenths of the land was subject to the plaintiff’s claim, and ordered a sale of so much of the land as was necessary for its payment, and further adjudged that the heirs of W. H. Garnett were entitled to the one seventh of the land claimed by them under their ancestor’s purchase; and this appeal is prosecuted for a reversal of that judgment on both branches of the case.
With reference to several merely technical objections taken by each party to the sale and conveyance sought to be upheld by the others, it may suffice to say that they are not only mostly deemed wholly untenable, but are not so set up and relied upon in the pleadings as to be entitled to consideration on this appeal.
In support of the judgment, so far as the land is thereby subjected to the appellees’ debts, it is urgently insisted that some of the averments of the petition supposed to be material should, although not proved, be treated as confessed by the failure of the defendants to traverse them; but we rather doubt the sufficiency of the averments of the petition as presenting a cause of action, than that of the denials of the answer as interposing a valid defense.
There is no proof of any agreement between Sally M. Craig and her mother in relation to either the sale of the land or the exercise of the right of redemption; nor is there any evidence that either of them did any thing whatsoever to prevent competition in bidding, or by any other means even attempted to effect for said Eliza Craig an unfair or unconscientious purchase. It is true the price for which the land sold was grossly *101 inadequate, and this is ordinarily a badge of fraud; but in the absence of any other evidence conducing to sustain the charge of fraud it is well settled that the validity of a sale will not be affected by the mere inadequacy of the price. (Hart v. Bleight, &c., 3 Mon. 273.) On this branch of the case the judgment must be reversed.
But we perceive no available grounds for disturbing the decision of the lower court as to the interest of one seventh of the land claimed by Garnett’s heirs. This branch of the controversy, as presented by the record, involves but one' question which seems to require particular consideration; that is, whether the circuit court had jurisdiction to render the judgment under which the sale was made to Garnett in the consolidated suits of Lillard and Williams against Craig’s administrator and heirs, the sum in controversy in each case being, exclusive of interest and costs, less than fifty dollars.
In the case of Bush v. Williams (6 Bush, 405) this court held, in substance and effect, that although generally the justices’ and quarterly courts have jurisdiction, exclusive of the circuit courts, of all actions and proceedings for the recovery of money or personal property, where the value of the matter in controversy does not exceed fifty dollars, exclusive of interest and costs, yet as it is declared by section 25 of the Civil Code that the title of real property “ shall not be affected by any judgment or order of a quarterly court, or of any court of similar or inferior jurisdiction,” and as by section 18 circuit courts have jurisdiction in all actions except where exclusive jurisdiction is given to other courts, it results that the circuit courts must have jurisdiction where the remedy sought necessarily affects the title to land, because of the exclusion of that remedy from the inferior courts.
It is, however, argued for the appellants, particularly upon the authority of the case of Weatherford v. Myers (2 Duvall, 91), that although Lillard and Williams only proceeded against *102 Craig’s administrator in the quarterly court, and did not sue his heirs before bringing their suits in the circuit court, they were nevertheless restricted from pursuing their remedy in the circuit court, because of the rights conferred on judgment creditors in certain cases, by section 846 of the Civil Code, of obtaining executions from the circuit court clerks’ offices, upon filing copies from the inferior courts.
The want of analogy between this and the case cited is manifest. In that case, judgment having been already obtained against the party whose real estate the plaintiff desired to reach, his remedy was complete under section 846, and the court very properly held that in such a case it would be unreasonable to permit the creditor to annoy his debtor with a new and unnecessary suit for subjecting his land. But in this case, as the plaintiffs could at most only have obtained executions from the circuit clerk’s office against the administrators of Craig, they must have been as ineffectual for reaching the land as if issued from the quarterly court.
■ Whatever might have been the effect of the judgment of Lillard and Williams against Craig’s administrator alone, on their right subsequently to sue the heirs at the common law, there can be no doubt, since the adoption of the Revised Statutes, of the creditor’s right to sue the heirs in equity on the original amount, as was done by Lillard and Williams, notwithstanding the previous recovery of a fruitless judgment against the personal representative. (1 R. S., sec. 10, chap. 40, p. 553; Hopkins v. Stout, 6 Bush, 375.)
For the reasons stated we concur in so much of the decision of the court below as sustains the title of Garnett’s heirs to the one seventh part of the tract of two hundred acres of land. But for the error we have indicated in the residue of the judgment the same is reversed, and the cause remanded for a judgment in conformity to this opinion.
Judge Pkyor did not sit in this case.